1  **Russell G. Petti**, State Bar No. 137160
   **THE LAW OFFICES OF RUSSELL G. PETTI**
2  466 Foothill Blvd., # 389
   La Canada, California 91011
3  818 952-2168Telephone
   818 952-2186 Facsimile
4  Rpetti@petti-legal.com E-Mail

5  Attorneys for Defendants Renee Dunbar, Peter Dunbar,
   Paretologic Inc., Elton Pereira, Adrian Pereira, and Jason Carvalho
6
                    **UNITED STATES DISTRICT COURT**
7
                   **NORTHERN DISTRICT OF CALIFORNIA**
8

9  PACIFIC INFORMATION                )  **CASE NO:** C 06-2306 MMC
   RESOURCES, INC.,                   )
10                                    )  **OPPOSITION OF DEFENDANTS**
                                      )  **PETER DUNBAR, RENEE DUNBAR,**
            Plaintiff,                )  **PARETOLOGIC INC., ELTON**
11                                    )  **PEREIRA, ADRIAN PEREIRA AND**
                                      )  **JASON CARVALHO TO PACIFIC**
12         vs.                        )  **INFORMATION RESOURCES,**
                                      )  **INC.'S MOTION TO DISQUALIFY**
13                                    )
   DIANA MUSSELMAN et al.,            )  **[OBJECTIONS TO EVIDENCE AND**
14                                    )  **DECLARATIONS OF RUSSELL G.**
            Defendants.               )  **PETTI (W/ EXHIBITS) AND BRUCE**
15                                    )  **HALLSOR FILED**
                                      )  **CONCURRENTLY]**
16                                    )
                                      )  **Date:       September 14, 2007**
17                                    )  **Time:       9:00 a.m.**
                                      )  **Court:      Courtroom of the**
18                                    )  **Honorable Maxine M.**
                                      )  **Chesney**
19  _____  )

20

21        Defendants Paretologic, Inc., Elton Pereira, Adrian Pereira, Jason Carvalho,

22  Peter Dunbar and Renee Dunbar hereby file the following Opposition to Plaintiff

23  Pacific Information Resources motion to disqualify their counsel, Russell Petti.

24  ///

25  ///

26  ///

27  ///

28  ///

- 1 -
**Opposition to Motion to Disqualify  C 06-2306 MMC**

1    This Opposition is based on the attached Memorandum of Points and

2 Authorities, the concurrently filed Declarations of Russell G. Petti (with exhibits)

3 and R. Bruce E. Hallsor, the files and records of this case, and what evidence and

4 argument is presented at the hearing of this matter.

5

6 Dated: August 24, 2007                    RUSSELL G. PETTI
                                            The Law Offices of Russell G. Petti
7

8
                                   By: _____/S/_____
9                                      Russell G. Petti
                                        Attorney for Defendants Paretologic,
10                                      Inc., Elton Pereira, Adrian Pereira
                                        Jason Carvalho, Peter Dunbar and
11                                      Renee Dunbar

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    I.    **INTRODUCTION**

3          The same counsel, Russell Petti, represents Paretologic, Inc., Elton Pereira,

4    Adrian Pereira and Jason Carvalho (hereinafter "the Paretologic Defendants"), as

5    well as Peter Dunbar and Renee Dunbar (hereinafter "the Dunbar Defendants")

6    (collectively referred to as "the Opposing Defendants").  The Opposing

7    Defendants all have the same interest, in that they run (or in the Dunbars case, ran)

8    completely legal web sites, yet were nonetheless sued by Pacific Information

9    Resources (hereinafter "PIR").  The Opposing Defendants also have completely

10   consistent defenses, which is that their sites simply aren't infringing on any right

11   of PIR.

12         Not being content with bringing the present overblown and remarkably

13   burdensome litigation (the Complaint contains <u>358 paragraphs</u>, with <u>42 separate</u>

14   <u>causes of action</u>), PIR is now engaged in additional litigation gamesmanship by

15   attempting to have the Opposing Defendants' counsel disqualified.  PIR alleges

16   that Mr. Petti is operating under a conflict of interest which, it contends

17   manifested during the April, 2007 mediation.

18         PIR's Motion should be rejected by this Court, for the following reasons:

19         ●      First, as explained in the concurrently filed Objections to Evidence

20                and Motion to Strike, the Motion to Disqualify relies exclusively on

21                mediation communications, not properly before this Court;

22         ●       The slurs on Mr. Petti's character and competence made in the

23                Motion to Disqualify are not only false, but demonstrably false, as

24                shown below;

25         ●      The conflict between the Dunbar Defendants and the Paretologic

26                Defendants is potential only, as their defenses are entirely consistent

27                with one another;

28   ///

- 1 -

1      ●     A potential conflict can be waived, and counsel for the Opposing

2          Defendants has a waiver signed by all defendants.

3      As such, the Opposing Defendants respectfully request that this Court deny

4 PIR's Motion to Disqualify.

5 II.      **STATEMENT OF RELEVANT FACTS**

6      A.      **The Underlying Facts of this Case**

7      In this litigation, plaintiff PIR contends that a number of entities and

8 persons have hacked into its web site and stolen content from it for their own web

9 sites. One of the alleged infringing sites was called "Instant Detective" which was

10 operated by Defendant Peter Dunbar, with some assistance from his wife, Renee

11 Dunbar. Another is the Records Registry site, which is owned and operated by

12 Paretologic, Inc. The remaining defendants, Elton Pereira, Adrian Pereira and

13 Jason Carvalho, are officers and/or employees of Paretologic.

14      The person responsible for the content on both sites is defendant Peter

15 Dunbar. Mr Dunbar compiled the material for the Instant Detective site, and then

16 licensed it to Paretologic. He did not, however, infringe on any rights of PIR–or

17 anyone else–when he obtained the content for the Instant Detective site. Rather,

18 his actions entirely comported with the law. (Petti Decl., ¶ 6).

19      B.      **The Joint Representation, the Potential Conflict, and the Waiver**

20      Initially, the present counsel for the Opposing Defendants, Mr. Petti, only

21 represented the Dunbar Defendants. Mr. Petti was contacted by counsel for the

22 Paretologic Defendants, Mr. Hallsor. Because of the joint interest the parties

23 possessed, Mr. Hallsor suggested that Mr. Petti undertake the joint representation

24 of all the clients. (Petti Decl., ¶ 2-4, Hallsor Decl., ¶ 4).

25      Mr. Petti recognized the potential conflict between the two groups of

26 defendants. For example if, in providing the content for the Records Registry site

27 Mr. Dunbar had infringed on PIR's legal rights, then Paretologic might have a

28 ///

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1    claim against him.  However, given the lack of any information that Mr. Dunbar

2    had acted improperly, the conflict was potential only.  (Petti Decl., ¶ 6).

3         Mr. Petti explained the nature of the potential conflict, as well as the

4    potential consequences should the conflict ripen into an actual conflict.  The

5    clients all agreed to waive the conflict.   (Petti Decl., ¶¶ 7-8, Hallsor Decl., ¶¶ 5-

6    8).  Since that time, each client has signed a waiver, expressly waiving the

7    potential conflict.  (Petti Decl., ¶ 9, Hallsor Decl., ¶ 9).[1]

8         **C.    The Plaintiff's Version of the Events at the Mediation are Badly Flawed**

9

10             **1.    The Court Should Disregard the Details of What Occurred at the Mediation, as They are Improperly Before this Court**

11        PIR has accused counsel for the Opposing Defendants of serious breaches

12   of ethics and competence.  These accusations are made by providing this Court,

13   through the Declarations of Mr. Koster and Mr. Trope, with a scurrilous and

14   largely untrue version of what occurred at the April, 2007 Court ordered

15   mediation.

16        Relating details of this Court ordered mediation to the Court is entirely

17   improper, for reasons stated in the Opposing Defendants' concurrently filed

18   Objections to Evidence and Motion to Strike.  The Opposing Defendants prefer

19   that this Court entirely disregard the conflicting versions of what occurred at the

20   mediation and strike PIR's Motion for violation of the confidentiality provision in

21   this Court's ADR Local Rules.  In the alternative, this Court should decide the

22   conflict issue based on the evidence presented in the Petti and Hallsor

23   Declarations.

24   ///

25   ///

26   _____

27        [1] Because this written waiver explains the nature of the conflict, it is subject
     to the attorney client privilege and will not be attached to this Motion.  If the Court
28   wishes it may examine the waiver *in camera*, and Mr. Petti will bring a copy of the
     waiver to the hearing for that purpose.

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1    However, in the event that the Court finds it necessary to explore the details

2    of what occurred at the mediation, the Opposing Defendants reluctantly submit the

3    details of what actually occurred.

4         2.    **The Assertion by Mr. Koster and Mr. Trope that Mr. Petti
               was Unprepared for the Mediation is False, as both
5              Declarants Well Know**

     Mr. Koster and Mr. Trope assert in their Declaration that the mediator, Mr.
6
     Gilliland, told them that Mr. Petti was not prepared for the mediation.  As an
7
     example of this lack of preparedness, Mr. Koster and Mr. Trope claim that Mr.
8
     Petti had not read any of the reports written by PIR's expert, Professor Hadas:
9
10        In addition, we were informed that Mr. Petti had not read a single
          expert report prepared by Professor Hadas: none of the reports on file
          with the court and none of the reports prepared for the Mediation.
11   (Koster Decl., ¶ 15, *Also*, Trope Decl., ¶ 16).

12        This is incorrect, as Mr. Petti had carefully read each of Professor Hadas'

13   reports.  (Petti Decl., ¶ 12).  And the Court need not wonder whose version of

14   events to believe here, because prior to the mediation Mr. Petti submitted a

15   mediation brief.  (Petti Decl., ¶ 12).  This mediation brief addresses one of

16   Professor Hadas' reports in great deal:

17        When examined on an individual basis, the conduct of which the
          Dunbars and Paretologic are accused is minimal, at best.
18        Specifically, in his 64 page, 158 paragraph report, Professor Hadas
          identifies only four wrongful acts allegedly committed by Dunbar
19        and Paretologic.  Specifically, Hadas alleges that:

20   ●        A link to a San Mateo restaurant that makes "Habanero
              Hamburgers"on Dunbar's site shows that he must have copied this
21            content from *Search Systems* (Hadas Decl., ¶ 83-95);

22   ●        The defendant sites have URLs containing the term "*searchsystems*"
              in alleged violation of PIR's trademark. (Hadas Decl., ¶ 108-09);
23
     ●        The reference "*searchsystems*" in the URL for a Washington Courts
24            site is allegedly both a violation of plaintiff's trademark, as well as an
              indication that the URL for this site was obtained from the *Search*
25            *Systems* website.  (Hadas Decl., ¶ 129-133); and

26   ●        The link to a *BFAST* website on the Paretologic and Dunbar website
              contains a unique identifier, which shows that it was allegedly copied
27            from the *Search Systems* website. (Hadas Decl., ¶ 134-53).

28   ///

- 4 -

1    (Petti Decl., Exhibit A, pg. 4).  Clearly, then, Mr. Petti had read Professor Hadas'

2    report with great care prior to the mediation.

3            More significantly, assuming that Mr. Trope bothered to prepare for the

4    mediation, he was aware that Mr. Petti was very familiar with Professor Hadas'

5    report.  This was because it is  Mr. Petti's usual practice to provide opposing

6    counsel with a copy of his mediation brief.  (Petti Decl., ¶ 13).  Pursuant to that

7    usual practice, on April 17th, the week before the mediation, Mr. Petti provided

8    Mr. Trope with a copy of the brief.  Mr. Trope cannot deny that he received it,

9    because it is evidenced by the email attached to the Petti Declaration as Exhibit B.

10   (Petti Decl., ¶ 13, Exhibit B).

11           So, unless Mr. Trope was so unprepared for the mediation that he hadn't

12   bothered to review opposing counsel's mediation brief, he knew his statement that

13   Mr. Petti hadn't read Professor Hadas' reports was false.  And unless Mr. Trope

14   was completely failing to properly communicate with his client, Mr. Koster knew

15   this as well.

16           In short, the Declarations provided to this Court in support of the Motion

17   show either a lack of candor to this Court, or a remarkable level of carelessness.

18                    3.      **Mr. Petti Did Not Scuttle the Settlement, Rather the**
                             **Paratologic Defendants Rejected it**
19

20           The Motion also contends that the settlement made no progress until Mr.

21   Petti departed.  The Motion contends that a settlement was agreed upon in Mr.

22   Petti's absence, which he proceeded to scuttle–for some unknown reason having

     to do with a conflict–when he returned on the scene.  In fact, it is true that Mr.
23
     Petti did not attend a follow on session to the mediation, and also that a settlement
24
     proposal was made in his absence.  It is absolutely false, however, that Mr. Petti
25
     did anything to hinder the settlement from occurring.
26
     ///
27
     ///
28

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1         What did occur is that, during the first day of the mediation, there was very

2   little accomplished.  The Opposing Defendants made a settlement proposal to PIR,

3   but never got a meaningful response.  (Hallsor Decl., ¶ 10).

4         After the mediation, plaintiff wished to continue the talks.  Given the lack

5   of results, Mr. Petti declined to stay, although Mr. Hallsor volunteered to stay for

6   an additional session. (Hallsor Decl., ¶¶ 11-12).  Mr. Petti would be available by

7   phone, and was available to return to the mediation if significant progress was

8   made.  (Hallsor Decl., ¶ 12).

9         During the additional session, a prospective deal was sketched out.

10  Basically, it involved a single $50,000 payment by the Paretologic Defendants and

11  the Dunbars (divided among them however they choose).  There were two caveats

12  to this settlement offer.  First, the Dunbars would have to agree to an injunction

13  being entered against them.  Second, Paretologic would have to enter into a

14  business arrangement with PIR.  (Hallsor, ¶ 13).

15        Due to the unusual nature of the proposal (i.e. that Paretologic would enter

16  into a business venture with the entity that had sued it), this proposal had to be

17  placed before the Paretologic board.  (Hallsor Decl., ¶¶ 14, 16).  However, Mr.

18  Hallsor was optimistic that the settlement would be approved.  (Hallsor Decl., ¶

19  15).

20        Ultimately, while the Paretologic board agreed to pay $25,000 in settlement

21  of this lawsuit, it rejected the portion of the offer that it enter into a business

22  arrangement with PIR.  The feeling of the board was that it would not be prudent

23  to enter into a business relationship with an entity that was capable of bringing the

24  present meritless and misguided lawsuit.  (Hallsor Decl., ¶ 16).   Rather than

25  working to hinder the settlement, in fact Mr. Petti thought the settlement was a

26  good one, and urged Hallsor to have the board reconsider its rejection of the

27  settlement.  (Petti Decl., ¶¶ 18-19, Hallsor Decl., ¶¶ 17-18).

28  ///

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1  III.  **LEGAL ARGUMENTS**

2      A.     **Counsel May Represent Parties with Potentially Conflicting Interests Where There is a Written Waiver In Place**

3  The California rules are clear that an attorney can represent clients with

4  potentially conflicting interests, where there is informed, written consent of the

5  clients.  According to Cal. Prof. Conduct Rule 3-310 (C):

6      A member shall not, without the informed written consent of each client:

7

8      (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict;

9  Cal. Prof. Conduct, Rule 3-310 (C).

10      Pursuant to this rule, Courts expressly permit an attorney to represent

11  parties with potentially conflicting positions, where there is a written waiver.  For

12  example, in *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893 a single attorney

13  represented a husband and wife at a marriage dissolution proceeding.  Both parties

14  had waived child support, but the County sought an order for child support from

15  the husband, and also compensation to the County for AFDC payments it had

16  made to the wife.  The trial judge found that the issue of whether the husband

17  would be required to pay child support to the wife created an actual conflict.  As

18  such, the trial court disqualified the attorney from the joint representation.

19      The Court of Appeals reversed.  The Court noted, first, that because the

20  husband and wife had consistent positions, their conflict was potential only:

21      The conflict of interest was strictly potential and not present. The parties had settled their differences by agreement. There was no point

22  of difference to be litigated. The position of each inter se was totally consistent throughout the proceedings. The wife did not want child

23  support from the husband, and the husband did not want to pay support for the children. The actual conflict that existed on the issue

24  of support was between the county on the one hand, which argued that support should be ordered, and the husband and wife on the other

25  who consistently maintained the husband should not be ordered to pay support.

26  *Klemm*, 75 Cal.App.3d at 899.  The Court held that, because the conflict was

27  potential only, joint representation was possible where there were knowing and

28  intelligent waivers in place:

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1   We hold on the facts of this case, wherein the conflict was only
    potential, that if the written consents were knowing and informed and
2   given after full disclosure by the attorney, the attorney can appear for
    both of the parties on issues concerning which they fully agree.
3   *Klemm*, 75 Cal.App.3d at 900.

4       As noted above, there are written waivers in place here, in which all of the

5   Opposing Defendants have waived the potential conflict.  As such, presuming that

6   the conflict is potential rather than actual, the joint representation is permissible.

7       B.      **The Conflict Here is Clearly Potential, Rather than Actual, the
                 Parties Do Not Have Conflicting Defenses**
8           The difference between a potential and an actual conflict was explored in

9   *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*  (1993) 12

10  Cal.App.4th 74.  In *Tsakos*, a general partner (Chabafy) to an (arguably) dissolved

11  limited partnership (Juniper)  borrowed money and, without authority, guaranteed

12  the loan on behalf of the partnership.  When the loan was unpaid, the creditor sued

13  Chabafy and Juniper.  The same attorney appeared on behalf of both Chabafy and

14  Juniper, and judgment was entered against both defendants.

15      In a later lawsuit over whether the judgment was binding on the partnership,

16  the Court held that there was an actual and non waivable conflict of interest

17  between the partnership and Chabafy.  This is because Juniper (the partnership)

18  had a valid defense that Chabafy acted without authority in guarantying the loan

19  in its behalf, which <u>its attorney had been required to raise</u>:

20          Here, the conflict was actual. Diligent representation of Juniper
            required Kohn to raise the defense that Chabafy's execution of the
21          guaranty agreement was outside the scope of his authority as a
            partner under the partnership agreement.  Conceivably, he should
22          even have filed a cross-complaint by Juniper against Chabafy for
            fraud or indemnification. This defense would have worked to
23          Chabafy's detriment. He could have been found liable not only to
            Tsakos, but also to Juniper for fraud. Moreover, the joint and several
24          judgment against Chabafy and Juniper enabled Tsakos to seek to
            collect the entire judgment from partnership assets rather than from
25          Chabafy's personal assets.
    *Tsakos Shipping*, 12 Cal.App.4th at 96 (footnote omitted).  The *Taskos* Court held
26
    that, given the nature of the conflict, even had there been a waiver, the dual
27
    representation would not have been permitted. "[A] party may not consent to dual
28
    representation of conflicting interests at a trial when there is an actual, present,

- 8 -

1   existing conflict and the discharge of duty to one client conflicts with the duty to

2   another." *Tsakos Shipping*, 12 Cal.App.4th at 96 (citation and attribution

3   omitted).

4        Here there is no actual conflict that prevents counsel from raising a defense

5   on behalf of either of the parties.  The Paretologic Defendants potentially have the

6   defense that Peter Dunbar provided them with the content for their site.  But Peter

7   Dunbar freely admits this, and contends that he did nothing illegal in gathering

8   that content.  There is absolutely nothing inconsistent in these defenses.   And, of

9   far greater significance, both parties have the common defense that there is simply

10  nothing infringing about either of their sites.

11       This common defense takes on added significance, given PIR's position

12  that Paretologic is still liable even if it purchased the content for its site in good

13  faith without knowledge of copyright violation or other infringement.  If this is a

14  correct statement of the law, then the only valid defense of the Paretologic

15  Defendants is the precise same defense of the Dunbar Defendants, which is that

16  their sites–which use the same content–simply don't infringe on any of PIR's

17  rights.

18       C.    **The Court Should Reject this Attempt at Litigation
                Gamesmanship**

19       PIR pretends that its primary reason for seeking this disqualification is out

20  of respect for the law and this Court.  In fact, this is pure litigation gamesmanship,

21  designed to deprive the Opposing Defendants of their counsel.  The Court should

22  reject this inter-meddling out of hand.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

- 9 -

**Opposition to Motion to Disqualify  C 06-2306 MMC**

1    IV.    **CONCLUSION**

2          For the reasons given above, the Opposing Defendants respectfully request

3    that the Motion to Disqualify be denied.

4

5

6    Dated: August 24, 2007                    RUSSELL G. PETTI
                                               The Law Offices of Russell G. Petti
7

8
                                          By:_____/s/_____
9                                            Russell G. Petti
                                             Attorney for Defendants Paretologic,
10                                           Inc., Elton Pereira, Adrian Pereira
                                             Jason Carvalho, Peter Dunbar and
11                                           Renee Dunbar

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

**Opposition to Motion to Disqualify  C 06-2306 MMC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorney for Plaintiff, Pacific Information Resources, Inc**.:
Konrad Lytell Trope
Novo Law Group, P.C.
4199 Campus Drive, Suite 550
Irvine, CA 92612
949-509-6531
Fax: 949-509-6532
Email: ktrope@novolaw.com

**Attorneys for Zaba, Inc.**:

Richard J. Mooney
Holme Roberts & Owen LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
415-268-2000
Fax: 415-268-1999
Email: richard.mooney@hro.com

**Via U.S. Mail**:
Diane Musselman, In Pro Per
15 Gleneagle Court
Piqua, OH 45356

**Attorneys for Defendant Airon Corp., Alexei Borisov and Levon Gasparian**:
Duncan Calvert Turner
Badgley Mullins Law Group, PLLC
701 5th Ave, Ste. 4750
Seattle, WA 98104
206-621-6566
Fax: 206-621-9686
Email: duncanturner@badgleymullins.com

Mark J. Wilson
Badgley Mullins Law Group
701 Fifth Avenue
Suite 4750
Seattle, WA 98101
206-621-6566
Fax: 206-621-9686
Email:  courtnotices@badgleymullins.com

Steven J. Rood
Attorney at Law
405 14th Street, Suite 212
Oakland, CA 94612
510-839-0900
Fax: 510-839-0230
Email: steve@steverood.com

<u>/s/ Russell G. Petti</u>
Counsel for Defendants
Peter Dunbar, Renee Dunbar, Paretologic Inc.,
Elton Pereira, Adrian Pereira and Jason Carvalho

- 11 -
**Opposition to Motion to Disqualify  C 06-2306 MMC**